## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONNELLY et. al.,                    :
        Plaintiffs,               :          3:07-CV-1881
                  :
   v.                                :
                  :          (JUDGE NEALON)
COMMONWEALTH FINANCIAL     :
SYSTEMS, INC.,                       :
        Defendant                :

FILED
SCRANTON

MAR 2 0 2008

PER _____ _____
DEPUTY CLERK

## MEMORANDUM AND ORDER

On October 16, 2007, Joseph Donnelly and Nancy Donnelly ("Plaintiffs")

filed a Complaint against Commonwealth Financial Systems, Inc. ("CFS" or

"Defendant").  (Doc. 1).  The Complaint sets forth four claims for relief: (1) that

CFS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692, et seq.; (2) that CFS violated the Pennsylvania Fair Credit Extension

Uniformity Act ("FCEUA"), 73 P.S. § 2270, et seq. ; (3) that CFS violated the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.; and (4) that CFS

violated the Pennsylvania Dragonetti Act, 42 Pa.C.S. §8351, et seq.  On November

28, 2007, CFS filed a Motion to Strike Paragraphs 11, 12, 13, and 27 from the

Complaint.  (Doc. 4).  The motion has been briefed by the parties and is ripe for

disposition.

1

**Background**

In their Complaint, Plaintiffs allege that on August 25, 2005, Mrs. Donnelly

filed bankruptcy under Chapter 7 of the Bankruptcy Code and listed only one

obligation on her schedules as being owed jointly with her husband.  On

December 9, 2005, she received a discharge and all creditors were notified.

Plaintiffs contend that, in March or April of 2006, CFS purchased a credit

card debt purportedly owed by Mr. Donnelly.  The Complaint states that:

> 11. Defendant routinely purchases large portfolios of defaulted debts
> for a fraction of their face value, often pennies on the dollar. The
> steeply discounted purchase price reflects the quality of the purchased
> debt, in that much of the debt is not collectible.
>
> 12. It is believed and therefore averred, that the consideration paid by
> Defendant to make the purchase [of the debt] was less than $400.00.
>
> 13. At the time of the alleged purchase, the principal balance alleged
> to be owed by Mr. Donnelly for the account ... was $3,348.38, nearly
> 10 times greater than the purchase price.

(Doc. 1, paras. 11, 12, 13).  Plaintiffs maintain that this credit card debt was not

the jointly owed obligation in the schedules; rather, that this debt was owed solely

by Mrs. Donnelly and was discharged in bankruptcy.

According to the Complaint, in May, 2006, CFS began attempting to collect

the debt from Mr. Donnelly and mailed a letter to Plaintiffs' residence.  On May

22, 2006, after receiving the letter, Mrs. Donnelly contacted CFS to explain that

2

she had solely owed the debt and that it was discharged in bankruptcy; but, CFS

still contended that Mr. Donnelly owed the debt. On June 7, 2006, Mr. Donnelly

sent a letter to CFS disputing that he owed the debt and explaining that it might

have been previously owed by his wife, but that the debt was not his. The letter

stated:

> I hope this is not a coincidence and that you are [sic] trying to collect
> from me a debt that my wife use [sic] to owe. I do not owe this debt.

> If you are going to try to sue me for it, please make sure that you first
> get a copy of something with my signature on it that would show I
> owe this debt. Since I have not signed anything like that, I expect you
> will not be suing me.

> I do not owe this bill and I am not going to pay it.

(Doc. 1, para. 18).

Plaintiffs further allege that, on October 24, 2006, CFS sued Mr. Donnelly

in the Wayne County Magisterial District Court. On November 3, 2006, Carlo

Sabatini, Esquire, defense counsel, sent a facsimile to CFS, requesting that it

either provide documentation verifying that Mr. Donnelly was an obligor on the

account or dismiss the lawsuit. On November 24, 2006, CFS was served with a

subpoena issued by the District Magistrate demanding that a witness appear at the

Magisterial District Court hearing and that it provide "all documentation bearing

[Mr. Donnelly]'s signature." Plaintiffs' Complaint states that:

3

27. CFS did not send a witness to the hearing, nor did CFS produce any document bearing Mr. Donnelly's signature. As the party that instituted the lawsuit, CFS should have sent a witness, even if it had not been served with a subpoena. That CFS chose to not send a witness despite the subpoena displays its abuse of, and contempt for, the judicial process.

(Doc. 1, para. 27). An attorney for CFS, Mr. Donnelly, and defense counsel, Mr. Sabatini, Esquire, appeared at the hearing and judgment was entered against CFS and in favor of Mr. Donnelly.

Plaintiffs allege that, on December 21, 2006, CFS filed a complaint in the Wayne County Court of Common Pleas, appealing the Magistrate Judge's ruling, and further, that this complaint was "replete with false statements." (Doc. 1, para. 32). First, they contend that CFS misrepresented information about sending the cardmember agreement to Mr. Donnelly. Second, Plaintiffs claim that the statement that "[a]s of November 16, 2006, the balance due and owing to [CFS] from [Mr. Donnelly] was $3,781.94," was false and that Mr. Donnelly did not owe any amount. Next, they maintain that the claimed balance included a charge of $90.00 for CFS's filing fee in the Magistrate Court, but there was no legal right to charge this fee, and further, that the statement as to when the fee was owed was false. Plaintiffs allege that Count II of CFS's complaint incorrectly stated that there was a pre-existing course of dealing between the parties and that Count III

4

falsely averred that it provided services to Mr. Donnelly.

In their Complaint, Plaintiffs assert that their attorney sent two facsimiles to CFS, stating that there was no evidentiary support for its claims and demanding that the lawsuit be withdrawn. According to the Complaint, on May 17, 2007, CFS mailed, to counsel, a copy of a praecipe to discontinue the action and of a cover letter addressed to the Prothonotary of the Wayne County Court of Common Pleas asking that the praecipe be filed. However, CFS never filed the praecipe and its action proceeded to arbitration, which the parties agreed would be binding. On August 13, 2007, a hearing was held before an arbitration panel in the Court of Common Pleas of Wayne County. Plaintiffs contend that CFS's only witness was not qualified to testify regarding the origination, amount, or original assignment of the debt and that it did not present any document with Mr. Donnelly's signature and, consequently, the arbitration panel ruled in favor of Mr. Donnelly.

Plaintiffs argue that CFS initiated the action in the Wayne County Magistrate Court and Court of Common Pleas without being able to obtain sufficient proof to prevail on its claims and after having failed to conduct an adequate investigation of the debt. Further, they allege that CFS furnished information regarding Mr. Donnelly's purported debt to TransUnion, LLC, a credit reporting agency as defined by the FCRA, but failed to communicate to

5

TransUnion, LLC, that this debt was disputed.  Plaintiffs contend that CFS obtained Mrs. Donnelly's credit report, but did not have a permissible purpose under the FCRA and falsely represented to TransUnion, LLC, that it was collecting on an account owed by Mrs. Donnelly.  Plaintiffs assert that CFS's conduct lowered Mrs. Donnelly's credit score by causing an additional record to be noted on her credit report and that it invaded her privacy.  The Complaint pleads claims under the FDCPA, FCEUA, FCRA, and Dragonetti Act.

The matter at issue now is CFS's Motion to Strike Paragraphs 11, 12, 13, and 27 from the Complaint.  (Doc. 4).  CFS argues that the allegations set forth in these paragraphs are "immaterial, impertinent, or scandalous to the issues" as provided for in Rule 12(f) of the Federal Rules of Civil Procedure and should be stricken from the Complaint.  (Doc. 4, paras. 2, 7).  Specifically, CFS asserts that paragraphs 11, 12, and 13 are "impertinent" under the Blacks Law Dictionary definition and that paragraph 27 fits the definition of "scandalous matter" with precision.  (Doc. 4, paras. 8-11).  It contends that the statements are not necessary to the cause of action, are intended solely to prejudice the jury, and will confuse the issues.  (Doc. 5, paras. 6-7).  CFS argues that Plaintiffs, through the allegations in paragraphs 11, 12, and 13, are seeking disclosure of confidential information about its business that is unrelated to the cause of action.  (Doc. 5, p. 6).

6

Plaintiffs defend the statements in paragraphs 11, 12, and 13, arguing that they support their claims of a violation of the FDCPA and the Dragonetti Act. (Doc. 6, p. 4). Plaintiffs assert that evidence that CFS purchased the debt for such a "cheap price" supports their contention that CFS knew documentary evidence to prevail in a lawsuit was not available and thus, the filing of the lawsuit in Wayne County was deceptive and unconscionable under the FDCPA and constituted gross negligence under the Dragonetti Act. (Doc. 6, pp. 5-6).

Plaintiffs further maintain that the allegations in paragraph 27, that CFS ignored a subpoena, failed to present any documents bearing Mr. Donnelly's signature, and declined to produce a witness at the Magisterial Court hearing, support their claim that CFS only filed the lawsuit in hopes of obtaining a judgment by default. Id. at 7-9. Plaintiffs argue that the action should have been withdrawn when Mr. Donnelly indicated his intent to defend and that CFS abused the judicial process by allowing Mr. Donnelly to incur needless legal fees, which was unfair and unconscionable in violation of the FDCPA. Id. at 8-9. Further, Plaintiffs assert that their statements in paragraph 27 substantiate their claim for relief under the Dragonetti Act that CFS's conduct was grossly negligent and that it was acting for an improper purpose. Id. at 8.

7

**Standard of Review**

Rule 12 provides that the "court may strike from a pleading an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R.

CIV. P. 12(f). "A court possesses considerable discretion in disposing of a motion

to strike under Rule 12(f)." Krisa v. Equitable Life Assur. Soc., 109 F. Supp. 2d

316, 319 (M.D. Pa. 2000) (Vanaskie, J.), quoting, North Penn Transfer, Inc. v.

Victaulic Comp. of America, 859 F. Supp. 154, 158 (E.D. Pa. 1994). However,

motions to strike are disfavored and should "be denied unless the allegations have

no possible relation to the controversy and may cause prejudice to one of the

parties, or if the allegations confuse the issues." Id.; Hanselman v. Olsen, 2006

U.S. Dist. LEXIS 1715, 1718 (M.D. Pa. 2006) (McClure, J.).  A motion to strike

for "immateriality or impertinence should not be granted if part of the challenged

material is so connected with the subject matter of the suit that it might be deemed

to present a question of law or fact that the court ought to hear." River Road Dev.

Corp. v. Carlson Corp. - Northeast, 1990 U.S. Dist. LEXIS 6201, 6221-22 (E.D.

Pa. 1990), citing, 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 1382, at 826 ("C. Wright & A. Miller").  Courts

have required that the moving party demonstrate prejudice before the court will

strike a pleading.  See United States v. Viola, 2003 U.S. Dist. LEXIS 11692,

8

11699 (E.D. Pa. 2003). Striking a pleading is a drastic remedy and should be sparingly used by the courts. Krisa, 109 F. Supp. 2d at 319; North Penn Transfer, Inc., 859 F. Supp. at 158.

## Discussion

In its motion, CFS asserts that the statements in paragraphs 11, 12, 13, and 27 are immaterial, impertinent, and/or scandalous matter that should be stricken from the Complaint. See FED. R. CIV. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief." Delaware Health Care, Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1291-92 (D. Del. 1995), citing 5A C. Wright & A. Miller § 1382, at 706-07. "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id.; Cech v. Crescent Hills Coal Co., 2002 U.S. Dist. LEXIS 15731, 15747 (W.D. Pa. 2002). There is considerable overlap between the concepts of "immaterial" and "impertinent" statements under Rule 12(f). River Road Dev. Corp., 1990 U.S. Dist. LEXIS at 6221. "'Scandalous matter' has been defined as 'that which improperly casts a derogatory light on someone, most typically on a party to the action.'" Carone v. Whalen, 121 F.R.D. 231, 233 (M.D. Pa. 1988) (Conaboy, J.); 5 C. Wright & A. Miller § 1382, at 826. "Scandalous pleading" must "'reflect

9

cruelly' upon the defendant's moral character, use 'repulsive language' or 'detract from the dignity of the court.'" <u>Carone</u>, 121 F.R.D. at 233, <u>citing Skadegaard v. Farrell</u>, 578 F. Supp. 1209, 1221 (D. N.J. 1984).

Plaintiffs defend the statements in the challenged paragraphs as being relevant to their claims under the FDCPA, sections 1692e and 1692f, and the Dragonetti Act.[1]  First, section 1692 of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation in connection with the collection of any debt," 15 U.S.C. § 1692e, and section 1692f states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.  The FDCPA was enacted "to protect consumers from a host of unfair, harassing, and deceptive collection practices without imposing unnecessary restrictions on ethical debt collectors." <u>FTC v. Check Investors, Inc.</u>, 502 F.3d 159, 165 (3d Cir. 2007), <u>citing</u>, <u>Staub v. Harris</u>, 626 F.2d 275, 276-77 (3d Cir. 1980).  Second, the Complaint pleads a claim pursuant to the Dragonetti Act, which provides:

---

[1]Although Plaintiffs, in their Brief Opposing Motion to Strike, do not discuss their claims under the FCEUA as additional grounds to oppose the Motion to Strike, sections 1692e and 1692f of the FDCPA are substantially the same as sections 2270.4(b)(5) and 2270.4(b)(6) of the FCEUA; therefore, the analysis herein also applies to the claims raised under the Pennsylvania statutes. <u>Compare</u> 15 U.S.C. § 1692e and § 1692f <u>with</u> 73 P.S. §§2270.4(b)(5), (6).

§ 8351.  Wrongful use of civil proceedings

(a) ELEMENTS OF ACTION.-- A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351.


### *(A)   Paragraphs 11, 12, and 13*

CFS asserts that the allegations in paragraphs 11, 12, and 13 are impertinent and immaterial and should be stricken from the Complaint.  Plaintiffs counter that evidence that CFS purchased the debt at a "steeply discounted price" supports their claim that CFS knew it would not have sufficient proof to prevail in a lawsuit to collect the debt and, thus, the filing of the complaint in Wayne County Court of Common Pleas was deceptive and unconscionable under the FDCPA.

In their Complaint, Plaintiffs allege that they twice sent CFS notice under PA. R. CIV. P. 1023.1 that there was no evidentiary support that Mr. Donnelly owed the debt, and that the lawsuit should have been withdrawn.  This Rule states:

11

(c)  The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, motion, or other paper. By signing, filing, submitting, or later advocating such a document, the attorney or pro se party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law,

(3) the factual allegations have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual allegations are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

PA. R. CIV. P. 1023.1.  Plaintiffs assert that CFS did not specifically identify which contentions in the complaint "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," as required under Rule 1023.1 and, therefore, CFS misrepresented to the Wayne County Court of Common Pleas that it already had evidence to substantiate the pleadings.

Further, Plaintiffs maintain that CFS was aware that Mr. Donnelly disputed the debt and had demanded that it produce documentary evidence to support the claim.  Plaintiffs argue that this knowledge, in combination with the cheap price of the debt, supports their pleading that CFS's actions were grossly negligent under

the Dragonetti Act. (Doc. 6, p. 7).

Plaintiffs' statements in paragraphs 11, 12, and 13 are connected to the claims for relief and may present a question of fact for the jury. See River Road Dev. Corp., 1990 U.S. Dist. LEXIS at 6221-22. The allegations relate to whether CFS was deceptive or acted grossly negligent in filing the state court action to collect on the disputed debt and, as such, the statements are not immaterial or impertinent. See Delaware Health Care, Inc., 893 F. Supp. at 1291-92; Cech, 2002 U.S. Dist. LEXIS at 15747. Further, information as to the nature of CFS's business, which involves purchasing and collecting debts, is not prejudicial, nor is there any reason to believe that the allegations will confuse the issues. See Hanselman, 2006 U.S. Dist. LEXIS at 1718.[2]

---

[2]It is recognized that a debt collector's filing of a lawsuit without the immediate means of proving the debt owed is not, in and of itself, a deceptive practice under the FDCPA; however, the additional allegations in Plaintiffs' complaint and the high burden to warrant striking a pleading dictate that the request to strike paragraphs 11, 12, and 13 be denied at this time. See Clark v. Unifund CCR Partners, 2007 U.S. Dist. LEXIS 31552, 31560-61 (W.D. Pa. 2007) (Schwab, J.) (dismissing, for failing to state a cause of action under the FDCPA, the plaintiff's claim that the defendant made a false, deceptive, or misleading representation by attaching the affidavit of defendant to the state court action, without presenting further documentary evidence of the debt. The Court noted, however, that the plaintiff did not allege that anything in the complaint was false or baseless); Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006) (finding that "the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor."); Deere v. Javitch, 413 F. Supp.2d 886, 891 (S.D. Ohio

### *(B)    Paragraph 27*

CFS argues that the statements in paragraph 27, that it ignored a subpoena by failing to send a witness to the Magisterial Court hearing and failed to present any documents bearing Mr. Donnelly's signature, are scandalous matter. CFS asserts that this paragraph has no possible relation to the controversy and should be stricken form the Complaint. Plaintiffs, however, contend that this allegation supports their claim that CFS knew it would be unsuccessful at a hearing and only filed the lawsuit in hopes of obtaining a judgment by default. Plaintiffs maintain that once CFS knew the debt was disputed, it should have discontinued the action and, by failing to do so, it required Mr. Donnelly to incur needless legal fees, which was gross negligence under the Dragonetti Act and an abuse of the judicial process in violation of the FDCPA.

Plaintiffs' statement that "CFS should have sent a witness" to the hearing does not "cruelly" reflect upon CFS's "moral character," nor does it use

_____

2006) (holding that the filing of a lawsuit supported by an affidavit attesting to the existence and amount of a debt is not a false representation, nor is it unfair or unconscionable); but see Platinum Fin. Service Corp. v. Delawder, 443 F. Supp. 2d 942, 947 (S.D. Ohio 2005) (recognizing claims under the FDCPA that are based upon a debt collector's filing of a complaint and attaching an affidavit that misrepresented the amount of the debt or the debt collector's legal claim upon the debt), appeal dismissed, 189 Fed. Appx. 369 (6th Cir. 2006), writ denied, Platinum Fin. Service Corp. v. Delawder, 127 S. Ct. 987, 166 L. Ed. 2d 711 (2007).

"repulsive language" or "detract from the dignity of the court," as required to meet the definition of scandalous matter under Rule 12. See Carone, 121 F.R.D. at 233; FED. R. CIV. P. 12(f). This allegation is not the type of disrespectful or vengeful matter the Court encountered in Carone. There, the Court found that the plaintiff's complaint, which included statements that the BOP "systematically subvert the civil rights of inmates," that the court "authorized the stealing of inmates' mail," that the "court has also ruled that probation officers may perjure themselves in affidavits and ... proffer perjured testimony with court implied immunity," that the United States Attorney was a "sniveling, whining individual," and that "the 'good old boy' theory of law [is] used by Judge Conaboy," was scandalous matter to be stricken from the record. Id. Plaintiffs' statement, here, about whether or not a witness should have attended a hearing does not "cruelly" reflect upon CFS's "moral character," nor is it the type of vengeful matter the courts have stricken in the past.

Further, the allegation that CFS ignored a subpoena by failing to send a witness to a hearing is not unnecessarily derogatory. To be "scandalous," degrading statements must be irrelevant, or, if relevant, must have gone into in unnecessary detail. Skadegaard v. Farrell, 578 F. Supp. 1209, 1221 (D.N.J. 1984) (holding that the plaintiff's statement that the defendants "attempted to suborn

15

perjury from witnesses ... in furtherance of defendants' conspiracy" was not scandalous matter). The allegations in paragraph 27 of the Complaint may be relevant to Plaintiffs' claim that CFS used unfair collection practices under the FDCPA and unjustly required Plaintiff to incur legal fees to defend an action that CFS had no means of proving. Plaintiff has not gone into unnecessary detail to warrant the drastic remedy of striking the pleading.

## Conclusion

For the reasons set forth above, CFS's Motion to Strike Paragraphs 11, 12, 13, and 27 from the Complaint will be DENIED.

/s/ William J. Nealon
**United States District Judge**

Date: March 20, 2008

16

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONNELLY et. al.,                       :
       Plaintiffs,                  :          3:07-CV-1881
                                    :
   v.                                 :
                                    :          (JUDGE NEALON)
COMMONWEALTH FINANCIAL    :
SYSTEMS, INC.,                          :
       Defendant                   :

## ORDER

**NOW, THIS 20th DAY OF MARCH, 2008,** for the reasons set forth in the

foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. Defendant's Motion to Strike Paragraphs 11, 12, 13, and 27 from the

Complaint (Doc. 4) is **DENIED**.


                                       /s/ William J. Nealon
                                  **United States District Judge**